UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER A. PEAK,

                    Plaintiff,          Civil Action No. 18-11143
                                      Honorable Thomas L. Ludington
v.                                      Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [19, 21]

Plaintiff Christopher Peak ("Peak") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act").  Both parties have filed summary judgment motions (Docs. #19, #21), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Peak is not disabled under the Act is not supported by substantial evidence.   Accordingly, the Court recommends that the

Commissioner's Motion for Summary Judgment (**Doc. #21**) be **DENIED**, Peak's

Motion for Summary Judgment (**Doc. #19**) be **GRANTED IN PART** to the extent

it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits,

and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED**

to the ALJ for further proceedings consistent with this Recommendation.

## II.   REPORT

### A.   Background

Peak was 33 years old at the time of his alleged onset date of April 23, 2015,[1]

and at 6' tall weighed approximately 150 pounds during the relevant time period.

(Tr. 186, 190).  He completed high school but had no further education.  (Tr. 40,

191).  He worked in sales for an auto parts retailer, but stopped working in April

2015 because of back pain, neck pain, and headaches.  (Tr. 39, 43, 196).  He now

alleges disability primarily as a result of these conditions.  (Tr. 38-39, 190).

After Peak's applications for DIB and SSI were denied at the initial level (Tr.

77-93), he timely requested an administrative hearing, which was held on April 11,

2017, before ALJ Timothy Christensen (Tr. 33-54).  Peak, who was represented by

Dannelly Smith, testified at the hearing, as did vocational expert Scott Silver.  (*Id.*).

On August 9, 2017, the ALJ issued a written decision finding that Peak is not

---

[1] Although the ALJ indicates that Peak's alleged onset date is March 10, 2015 (Tr. 22), Peak
amended this date at the hearing to April 23, 2015 (Tr. 39).

2

disabled under the Act.  (Tr. 20-28).  On January 29, 2018, the Appeals Council denied review.  (Tr. 1-5).  Peak timely filed for judicial review of the final decision on April 10, 2018.  (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Peak's medical record, Function and Disability Reports, and testimony as to his conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.    The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . .

physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Peak is not disabled under the Act.  At Step One, the ALJ found that Peak has not engaged in substantial gainful activity since the alleged onset date.  (Tr. 22).  At Step Two, the ALJ found that he has the severe impairment of degenerative disc disease.  (*Id.*).  At Step Three, the ALJ found that Peak's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (Tr. 23).

4

The ALJ then assessed Peak's residual functional capacity ("RFC"), concluding that he is capable of performing sedentary work, with the following additional limitations:  requires a sit/stand option, which by exercising he would be off task less than 10% of any given workday; occasional postural activities, but no climbing of ladders, ropes, or scaffolds; frequent bilateral reaching; must avoid even moderate exposure to vibrations and hazards; and, due to pain, would be limited to unskilled work that could be learned by demonstration in 30 days or less.  (Tr. 23-24).

At Step Four, the ALJ found that Peak is not capable of performing any of his past relevant work.  (Tr. 27).  At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Peak is capable of performing the jobs of order clerk (212,000 jobs nationally), addresser (104,000 jobs), and stuffer (71,000 jobs).  (Tr. 28).  As a result, the ALJ concluded that Peak is not disabled under the Act.  (*Id.*).

### C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).   Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).   In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).   There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).   If the Commissioner's decision is supported by substantial evidence, "it must be affirmed

even if the reviewing court would decide the matter differently and even if

substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of*

*Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D.   Analysis

As set forth above, at Step Two, the ALJ found that Peak has the severe

impairment of degenerative disc disease.  (Tr. 22).  Then, the ALJ concluded at Step

Three that Peak "does not have an impairment or combination of impairments that

meets or medically equals" a listed impairment.   (Tr. 23).   In explaining this

conclusion, however, the ALJ said only:

> The claimant's musculoskeletal impairments do not meet listing-
> level severity.   There is no evidence of neuro-anatomic
> distribution of pain, limitation of motion of the lower back, motor
> loss accompanied by sensory or reflex loss, or positive straight
> leg raising in both sitting and supine positions so as to meet the
> criteria of Listing 1.04.

(*Id.*).  Peak now argues that one aspect of the ALJ's Step Three finding – namely,

the conclusion that his impairments do not medically equal Listing 1.04(A) – is not

supported by substantial evidence.[2]  (Doc. #19 at 8-13).  For the reasons set forth

below, the Court agrees.

---

[2] In his motion for summary judgment, Peak also argues that the ALJ's RFC finding is not
supported by substantial evidence because there is no medical opinion underpinning it, and that
the ALJ erred in evaluating his subjective complaints.  (Doc. #19 at 13-19).  Because the Court is
recommending remand on other grounds, it declines to address the merits of these arguments.
Nonetheless, if, on remand, the ALJ determines that Peak's impairments do not medically equal
Listing 1.04(A), the ALJ should ensure that proper consideration is given to both of these issues
as well.

Listing 1.04(A) requires evidence of a disorder of the spine (*e.g.*, degenerative disc disease) with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04(A). It is well-settled that to "meet" a Listing, a claimant's impairments must satisfy each and every element of the Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (emphasis in original).

But, even if Peak cannot demonstrate that he meets the criteria of Listing 1.04(A), he can still satisfy his burden at Step Three by proving that he has an impairment (or combination of impairments) that medically equals this Listing. To do so, he must "present medical evidence that describes how [his] impairment is equivalent to a listed impairment." *Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004). This means that Peak must present medical findings showing symptoms or diagnoses equal in severity and duration "to *all* the criteria for the one most similar listed impairment." *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 874 (6th Cir. 2003) (internal quotations omitted). In this case, thorough

consideration of the medical evidence seriously undermines the ALJ's conclusion that Peak does not medically equal Listing 1.04(A).

By way of background, as the ALJ noted, Peak first complained of back and neck pain in May 2015.  (Tr. 25, 228).  That month, he began treating at The Pain Center, and MRIs of the cervical and lumbar spines were performed on May 26, 2015.  (Tr. 230-31).  The lumbar spine MRI revealed left subarticular disc protrusion at L5-S1, which approached but did not visibly affect the left L5 and left S1 nerve roots; a disc bulge at L4-L5, without spinal stenosis or nerve root compression; and facet osteoarthritis at L4-L5 and L5-S1.  (Tr. 230).  The cervical spine MRI showed spinal stenosis at C3-C4 and C6-C7, with flattening of the spinal cord due to a disc bulge and protrusion; left C6-C7 neural foramen narrowing, which "may affect the left C7 nerve root"; and disc bulges at C4-C5 and C5-C6, without spinal stenosis or nerve root compression.  (Tr. 231).  As a result, over the next few months, Peak underwent a series of caudal epidural steroid injections, as well as physical therapy and chiropractic treatment.  (Tr. 239-64).

On January 27, 2016, Peak presented to Richard Fessler, M.D. at Michigan Head and Spine Institute, complaining of back and neck pain.  (Tr. 344-48).  On examination, Peak had intact sensation, full strength (other than in the left triceps), and extensive paracervical and paralumbar spasms.  (Tr. 346).  Dr. Fessler characterized Peak's physical complaints as "well out of proportion to his imaging

findings" and indicated that he did not believe he would improve substantially with surgical intervention. (*Id.*). Instead, he recommended a full course of physical therapy, including at least eight weeks of reconditioning. (*Id.*).

Peak did not return to Dr. Fessler, and instead presented to Rahul Vaidya, M.D. at the Detroit Medical Center Orthopedic Clinic on March 15, 2016. (Tr. 367-68). Peak reported a considerable amount of back and neck pain, as well as some weakness. (Tr. 367). On physical examination, he had 4/5 strength in the bilateral upper and lower extremities; a positive Spurling test; and a negative straight leg raise test. (*Id.*). The impression was cervical stenosis. (*Id.*).

An updated MRI of Peak's lumbar spine, performed on April 14, 2016, showed disc bulging at L5-S1 with a superimposed left paracentral disc protrusion, with associated annular fissure that mildly displaced the intraspinal S1 nerve, and L5-S1 disc degeneration. (Tr. 395-96). On April 26, 2016, Peak returned to see Dr. Vaidya for review of these MRI results. (Tr. 359-60).[3] On physical examination, he had limited range of motion of the cervical spine with rotation and side bending, intact sensation, and a positive straight leg raise on the left. (Tr. 359). Noting that

---

[3] In his decision, the ALJ stated: "The claimant's representative contends that there had been no definitive recommendations as the physicians wanted to see the new MRI; yet, the claimant never returned for any follow-up with a new MRI." (Tr. 25). This is incorrect, as Peak returned to Dr. Vaidya just a couple of weeks after his April 2016 MRI. (Tr. 359-60). It is not clear why Dr. Vaidya's notes indicate that Peak "was sent for an MRI of his lumbar spine last time he was here, [but] he did not get that done" (Tr. 359), as the lumbar spine was performed, and Dr. Vaidya specifically referenced its findings (*Id.* ("MRI was reviewed which does show L5-S1 disk protrusion")).

the majority of Peak's pain was in the neck and left upper extremity, Dr. Vaidya ordered a new MRI of the cervical spine.  (Tr. 360).

Subsequently, Peak presented to Jad Khalil, M.D. in June 2016.  (Tr. 341-42). Between July and September 2016, Peak attended nineteen physical therapy visits. (Tr. 282).  An October 17, 2016 MRI of Peak's cervical spine showed "[l]eft-sided disc protrusion at C5-C6 with resulting mass effect upon the left-sided C6 nerve root as well as left-sided disc extrusion at C6-C7 with resulting mass effect upon the left-sided C7 nerve root."  (Tr. 313).  At a follow-up visit on November 19, 2016, Dr. Khalil referenced the disc herniation, indicating that if Peak were to stop smoking and using marijuana, he would be a candidate for C6-7 anterior cervical discectomy and fusion surgery.  (Tr. 338-39).

Given all of this medical evidence, and considering the requirements of Listing 1.04(A), the Court cannot find that substantial evidence supports the ALJ's perfunctory conclusion that Peak does not medically equal this Listing.  To begin with, the ALJ properly concluded that Peak has the severe impairment of degenerative disc disease.  (Tr. 22).  Thus, there is no dispute that Peak showed he suffered from a "disorder of the spine."  20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04(A).

The ALJ also ignores significant evidence of nerve root compression in the record.  Specifically, in discussing Peak's various MRI results, the ALJ says only:

> The claimant underwent a MRI of the cervical spine and lumbar spine per orders of Dr. Raj Bothra.  These tests did depict the presence of mild degenerative disc disease, including stenosis, at multiple levels.  Similar findings are seen in October 2016 MRIs.

(Tr. 25).  The ALJ's observations in these respects do not accurately characterize the evidence.  For example, although Peak's May 2015 lumbar spine MRI did not show nerve root compression (Tr. 230), the cervical spine MRI performed at the same time showed spinal stenosis at C3-C4 and C6-C7, with flattening of the spinal cord; left C6-C7 neural foramen narrowing, which "may affect the left C7 nerve root"; and disc bulges at C4-C5 and C5-C6 (Tr. 231).  Similarly, the April 2016 MRI of Peak's lumbar spine – which the ALJ characterized as showing "no significant problems" (Tr. 25) – actually showed disc bulging at L5-S1 with a superimposed left paracentral disc protrusion that *mildly displaced the intraspinal S1 nerve*.  (Tr. 395-96).  At least one of Peak's physicians indicated that surgery may be warranted, but only after Peak stopped smoking cigarettes and marijuana.  (Tr. 338-39).  And, perhaps most importantly, the October 2016 MRI of Peak's cervical spine – which the ALJ did not discuss in any detail whatsoever – showed "[l]eft-sided disc protrusion at C5-C6 ***with resulting mass effect upon the left-sided C6 nerve root*** as well as left-sided disc extrusion at C6-C7 ***with resulting mass effect upon the left-***

*sided C7 nerve root*."[4]   (Tr. 313).  Thus, it certainly appears that the "nerve root

compression" criteria of Listing 1.04(A) is also satisfied.

To the extent the Listing requires not just a showing of nerve root

compression, but "nerve root compression *characterized by* neuro-anatomic

distribution of pain, limitation of motion of the spine, motor loss (atrophy with

associated muscle weakness or muscle weakness) accompanied by sensory or reflex

loss and, if there is involvement of the lower back, positive straight-leg raising test

(sitting and supine)," 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04(A) (emphasis

added), there also is evidence in the record at least tending to suggest that these

requirements are satisfied, much of which the ALJ ignored or minimized.  For

example, Peak complained on multiple occasions of pain radiating to upper and

lower extremities (Tr. 272, 338, 341, 344, 367), as well as numbness and/or

weakness (Tr. 341, 359, 367 (positive Spurling test)), and he was diagnosed with

radiculopathy (Tr. 232), all of which at least arguably evidences neuro-anatomic

distribution of pain and should have been analyzed.  In addition, the record contains

evidence of a limited range of motion of Peak's spine (*E.g.*, Tr. 236, 274, 306, 359);

---

[4] The Commissioner asserts that "while MRIs of [Peak's] cervical spine show stenosis and disc
bulge with mass effect on the left C6 and [C7] nerve roots, there is no clear identification of nerve
root compression."  (Doc. #21 at 8).  As an initial matter, it certainly stands to reason that if a
protrusion or extrusion has a "mass effect" on a nerve root, that nerve root is being compressed.
More importantly, however, the Commissioner's argument ignores the fact that the ALJ did not
discuss these MRI findings, and instead merely asserted (incorrectly) that the October 2016 MRI
showed findings "[s]imilar" to the 2015 MRIs, which he characterized as depicting simply the
presence of "mild degenerative disc disease" at multiple levels.  (Tr. 25).

there is evidence of muscle weakness (Tr. 306, 338, 346, 367); and the record contains evidence of positive straight-leg raising tests (Tr. 228, 274, 279, 359).

While the Court acknowledges that the evidence discussed above does not overwhelmingly demonstrate that Peak medically equals Listing 1.04(A), the problem is that the ALJ's Step Three analysis consists of nothing more than a conclusory sentence that parrots back the requirements of the Listing, without any actual comparison of the relevant evidence to those requirements.  (Tr. 23).  As set forth above, Peak's 2016 MRIs – the results of which the ALJ failed to discuss in any real fashion – demonstrate significant herniations in both his lumbar and cervical spines.  These objective findings, combined with symptoms noted in both the upper and lower extremities, certainly suggest that more thorough consideration should have been given to the issue of medical equivalence.[5]  Had the ALJ engaged in such analysis, he at least arguably could have determined that Peak medically equals Listing 1.04(A).[6]  As such, remand is required.

---

[5] The Commissioner also cites to Social Security Ruling ("SSR") 17-2p, asserting that, pursuant to this Ruling, "the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment."  *Soc. Sec. Rul. 17-2p*, 2017 WL 3928306, at *4 (Mar. 27, 2017).  Peak disputes the applicability of SSR 17-2 p on the facts of this case.  (Doc. #25).  Even assuming that this Ruling applies, however, the ALJ's analysis is insufficient because, although the ALJ might no longer be "required to articulate specific evidence" supporting his finding regarding medical equivalency, such a finding still must be supported by substantial evidence in the record.  Here, the ALJ's finding that Peak does not medically equal Listing 1.04(A) lacks such evidentiary support for the reasons discussed above.

[6] The Commissioner argues that the opinion of state agency physician Myung Ho Hahn, who reviewed Peak's file and assessed his RFC without finding that any Listing was met, "constitutes additional, substantial evidence supporting the ALJ's determination that [Peak] did not meet

## III.   CONCLUSION

For foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #21**) be **DENIED**, Peak's Motion for Summary Judgment (**Doc. #19**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Report and Recommendation.

Dated: May 23, 2019                          s/David R. Grand
Ann Arbor, Michigan                       DAVID R. GRAND
                                                        United States Magistrate Judge

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir.

---

Listing 1.04." (Doc. #21 at 10 (citing Tr. 59-61)). The problem, however, is that although Dr. Hahn reviewed Peak's 2015 MRIs, there is no indication that he reviewed the 2016 lumbar or cervical spine MRI results. (Tr. 70). Moreover, the ALJ made no mention of Dr. Hahn's opinion in reaching his Step Three conclusion.

2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 23, 2019.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
